NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re DURO DYNE NATIONAL CORP., <br><br> Debtor. | Bankruptcy Action No. 18-27963 (MBK) |
| ANDREW R. VARA, ACTING UNITED STATES TRUSTEE, <br><br> Appellant, <br><br> v. <br><br> DURO DYNE NATIONAL CORP., *et al.*, <br><br> Appellees. | Civil Action No. 18-15563 (MAS) <br><br> **MEMORANDUM OPINION** <br><br> **ON APPEAL FROM THE BANKRUPTCY COURT OF THE DISTRICT OF NEW JERSEY** |

**SHIPP, District Judge**

This matter comes before the Court on Appellant Acting United States Trustee Andrew Vara's ("Appellant" or "U.S. Trustee") appeal, (Notice of Appeal, ECF No. 8), from the Bankruptcy Court's Order appointing Lawrence Fitzpatrick as legal representative for future asbestos personal injury claimants, (Bankr. ECF No. 191).[1] Duro Dyne National Corp., Duro Dyne Machinery Corp., Duro Dyne Corp., Duro Dyne West Corp., and Duro Dyne Midwest Corp. (collectively, "Duro Dyne"); the Official Committee of Asbestos Claimants; and Lawrence Fitzpatrick (collectively, "Appellees") jointly submitted a brief in opposition, (ECF No. 9), and the U.S. Trustee replied, (ECF No. 17). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For

---

[1] Docket entries from the bankruptcy proceeding, *In re Duro Dyne*, No. 18-27963 (Bankr. D.N.J.), are designated as "Bankr. ECF No."

the reasons set forth below, the Court denies the U.S. Trustee's appeal and affirms the Order of the Bankruptcy Court.

## I.    BACKGROUND

### A.    Prepetition Background

Duro Dyne manufactures sheet metal accessories and equipment for the heating, ventilating, and air conditioning industry. (A81.)[2] Some of the products sold by Duro Dyne between 1952 and 1978 allegedly contained asbestos. (A85.) Since 1988, Duro Dyne has been a defendant in thousands of asbestos-related suits throughout the country. (A85–86.) Over the years, Duro Dyne shouldered an increasing share of litigation costs resulting from the insolvency of one of its insurance carriers, exhaustion of its primary insurance coverage, and disputes with other insurance carriers providing excess coverage. (A86.)

In 2015, Duro Dyne began discussions with counsel for current asbestos personal injury claimants about a prenegotiated Chapter 11 plan of reorganization that would include an injunction channeling all asbestos claims to an asbestos trust pursuant to § 524(g) of the Bankruptcy Code. (*Id.*) Counsel for current asbestos claimants formed an ad hoc committee ("Ad Hoc Committee") to negotiate terms of a reorganization plan. (*Id.*) In May 2017, Duro Dyne and the Ad Hoc Committee began searching for an independent third party to represent the interests of future asbestos personal injury claimants in negotiations. (A87.) Duro Dyne selected Lawrence Fitzpatrick. (A87.)

Mr. Fitzpatrick has extensive experience with asbestos litigation and currently serves as the future claimants' representative in six bankruptcies that have been confirmed and three additional bankruptcies that have not been confirmed. (A87, 861.) Prior to being approached for

---

[2] Unless otherwise noted, all record citations are to the Appellant's Appendix, ECF No. 8-1 to 8-7.

the position, he had no relationship or history with Duro Dyne. (A88.) According to the engagement letter with Duro Dyne: Mr. Fitzpatrick's "sole responsibility and loyalty" was "to the future asbestos personal injury claimants"; his fees were to be paid by Duro Dyne, but were not capped;[3] and Duro Dyne had "no right to control or influence" how he conducted his work. (A383.) If Duro Dyne filed a bankruptcy petition, Duro Dyne "anticipate[d] that it would ask the Bankruptcy Court to appoint Mr. Fitzpatrick" as future claimants' representative but specified that such engagement was subject to approval by the bankruptcy court. (A383–84.)

After Mr. Fitzpatrick's engagement, Duro Dyne and the Ad Hoc Committee presented him with a draft term sheet with proposed provisions for the plan of reorganization. (A869.) Over the next eight months, Mr. Fitzpatrick, through counsel, negotiated the provisions of the term sheet and performed due diligence into the funding of the trust. (A89, 870–71, 888–89.) The term sheet did not require Mr. Fitzpatrick to consent to any plan of reorganization proposed by Duro Dyne, but Mr. Fitzpatrick's consent to a plan of reorganization was required before Duro Dyne could file a bankruptcy petition. (A872–73.) Following negotiations over the term sheet, Mr. Fitzpatrick negotiated terms of a draft plan of reorganization and draft trust documents, such as the disclosure statement, trust agreement, and trust distribution procedures. (A870–71, 874.) Eventually, Duro Dyne, the Ad Hoc Committee, and Mr. Fitzpatrick agreed to a plan of reorganization. (A617.) Duro Dyne filed a bankruptcy petition and the proposed, prenegotiated plan of reorganization on September 7, 2018. (A110–275.)

---

[3] Although the fees were not capped, Mr. Fitzpatrick was required to provide advance notice to Duro Dyne if fees were expected to exceed $25,000 in one month. (A383.)

## B.     Pre-Appointment Bankruptcy Proceedings

Four days after filing the bankruptcy petition, Duro Dyne filed a motion seeking Mr. Fitzpatrick's appointment as legal representative for future asbestos personal injury claimants, commonly known as the future claimants' representative or the future claims representative, pursuant to 11 U.S.C. § 524(g)(4)(B)(i). (A354–92.)

The U.S. Trustee objected to the motion, arguing that the motion lacked sufficient information to show that Mr. Fitzpatrick was free of conflicts of interest and capable of representing future claimants, and that a debtor's nominee for future claimants' representative should not be entitled to deference. (A406–25.) The U.S. Trustee requested discovery into the circumstances of Mr. Fitzpatrick's hiring, the conditions of his employment, and the post-bankruptcy trusts for which he is employed—including his relationships with the asbestos personal injury claimants' attorneys.[4] (A422–23.) Duro Dyne responded, (A426), and Mr. Fitzpatrick joined Duro Dyne's response, (Bankr. ECF No. 120). The Official Committee of Asbestos Claimants separately responded in support of Duro Dyne's motion.[5] (A451.)

The Bankruptcy Court held a hearing on Duro Dyne's motion and the U.S. Trustee's objection. (A473–554.) The U.S. Trustee requested discovery of documentary and testimonial evidence and identified four areas of inquiry: the circumstances of Mr. Fitzpatrick's selection; Mr. Fitzpatrick's prepetition activities; the terms of Mr. Fitzpatrick's engagement as prepetition future claimants' representative; and the circumstances of Mr. Fitzpatrick's selection in other

---

[4] The U.S. Trustee appointed the Official Committee of Asbestos Claimants—which contained some members of the Ad Hoc Committee—on September 27, 2018. (Bankr. ECF No. 107.)

[5] There were separate objections that need not be addressed here from insurers Federal Insurance Company, (Bankr. ECF No. 103), North River Insurance Company, (Bankr. ECF No. 108), and Hartford Accident and Indemnity Company, (Bankr. ECF No. 114).

bankruptcies. (A504.) The Bankruptcy Court identified the "disinterested person" standard under 11 U.S.C. § 101(14) as the appropriate standard to guide its conflicts analysis, (A540), and it permitted discovery on the four topics identified by the U.S. Trustee, (A539), which the Bankruptcy Court considered "concrete[,] narrow[,] discrete issues as to Mr. Fitzpatrick's disinterestedness," (A540).

Over the next two weeks, Duro Dyne, the Ad Hoc Committee, and Mr. Fitzpatrick produced documents at the request of the U.S. Trustee, but all three objected to the production of certain documents. Separately, Duro Dyne and Mr. Fitzpatrick objected to the production of privileged documents protected by the common-interest doctrine or documents irrelevant to the disinterestedness inquiry, including documents related to the negotiations between Duro Dyne, the Ad Hoc Committee, and Mr. Fitzpatrick over drafts of the reorganization plan. (A786–95, 797–808.) The Ad Hoc Committee objected to the production of any documents, stating that it was not authorized by the Bankruptcy Court and incorporating the objections by Duro Dyne and Mr. Fitzpatrick. (A810–11.) The U.S. Trustee deposed Mr. Fitzpatrick as well as Duro Dyne CEO Randall Hinden. (A579–693, 715–72.) The U.S. Trustee filed a supplemental objection to Mr. Fitzpatrick's appointment, (A555–832), Duro Dyne filed a supplemental response, (A833–49), and Mr. Fitzpatrick submitted a joinder to Duro Dyne's response, (Bankr. ECF No. 176).

### C. Evidentiary Hearing and Appointment of Mr. Fitzpatrick

The Bankruptcy Court held an evidentiary hearing on Duro Dyne's motion. Mr. Fitzpatrick testified and was cross-examined by counsel for insurers Hartford Accident and Indemnity Company ("Hartford") and Federal Insurance Company as well as counsel for the U.S. Trustee. (A850–916.) The Bankruptcy Court also heard argument from counsel representing Duro Dyne, the Official Committee of Asbestos Claimants, Mr. Fitzpatrick, the U.S. Trustee, and the objecting insurers. (A918–81.)

On cross-examination, Hartford questioned Mr. Fitzpatrick about his negotiations over the term sheet and the specific changes he suggested. (A889–90.) Counsel for the Official Committee of Asbestos Claimants objected, asserting that such information was privileged and protected under the common-interest doctrine because, in the prepetition period, a prepetition future claimants' representative and an ad hoc committee are aligned against the insurer. (A890.) The Bankruptcy Court heard argument from counsel representing insurers, the Official Committee of Asbestos Claimants, and Mr. Fitzpatrick. (A890–95.) The Bankruptcy Court sustained the objection, precluding "inquiry into the details of the negotiations" because they were irrelevant, privileged, and protected under the common-interest doctrine and because the focus of the inquiry was "whether or not [Mr. Fitzpatrick] was simply accepting a term sheet as is and signing off on it." (A895.)

In an oral ruling the next day, the Bankruptcy Court found that Mr. Fitzpatrick was a disinterested person under 11 U.S.C. § 101(14) and appointed him as future claimants' representative. (A999–1016.) The Bankruptcy Court made the following factual findings about Mr. Fitzpatrick, his prepetition work, and potential conflicts of interest:

- He has approximately thirty-eight years of experience in asbestos personal injury litigation; he has served as a future claimants' representative in six asbestos bankruptcies and other pending bankruptcies. (A1003.)

- He had no contact or relationship with Duro Dyne prior to his phone interview. (A1003–04.)

- He had no contact with attorneys for the ad hoc committee or its members in connection with this case; he had no social contact with asbestos personal injury attorneys, and his professional contact was limited to court appearances and trust meetings. (A1004.)

- In his prepetition engagement, he worked and spoke through his counsel; his engagement letter with Duro Dyne was negotiated by counsel and contained indemnification language to ensure his independence; his fees were not capped; he could only be terminated

for cause, including a change in direction by Duro Dyne, Duro Dyne's decision not to pursue bankruptcy, or his failure to productively pursue negotiations; and he was not subject to Duro Dyne's control. (A1004–05.)

- At the time of his retention there was no deal between Duro Dyne and the Ad Hoc Committee; he engaged in substantial negotiations and worked to modify the existing term sheet; he undertook due diligence of Duro Dyne's insurance and financial resources; he negotiated changes to the proposed draft plan, disclosure statement, trust agreement, and trust distribution procedures; and the term sheet did not obligate him to support any plan, but only to support a plan which complied with § 524(g) and to which he consented. (A1005–06.)

- During the plan negotiations, the interests of future and present asbestos personal injury claimants were "sufficiently aligned in efforts to secure the highest level of funding from [Duro Dyne] and its insurers." (A1006.)

- His consent to the filed plan of reorganization does not preclude him from considering modifications or objections; he never demanded appointment as post-confirmation future claimants' representative as a condition for his prepetition work; and his duties as future claimants' representative in other cases are not conflicts of interest because he does not manage or oversee the trusts. (A1006–07.)

On this record, the Bankruptcy Court found that Duro Dyne established that Mr. Fitzpatrick was a disinterested person, (A1009–1016), and entered the order appointing Mr. Fitzpatrick the future claimants' representative on October 17, 2018, (A1018–22). The U.S. Trustee timely appealed the Bankruptcy Court's Order appointing Mr. Fitzpatrick future claimants' representative.

## II.   ISSUES PRESENTED ON APPEAL

Appellant raises the following issues for appeal:

1. Did the Bankruptcy Court "err by limiting its consideration to a single candidate . . . who was nominated and supported by his adversaries?" (Appellant's Br. 4–5, ECF No. 8.)

2. Did the Bankruptcy Court err "by considering only whether Mr. Fitzpatrick had a disabling conflict of interest while refusing to

consider the entanglements and the 'qualifications of Mr. Fitzpatrick?'" (*Id.* at 5.)

3. Did the Bankruptcy Court "violate [§] 524(g)'s and the Code's text, structure and evident purpose by applying that standard rather than the traditional fiduciary standards that apply to fiduciaries who . . . represent absent parties?" (*Id.*)

4. Did the Bankruptcy Court err in appointing Mr. Fitzpatrick under either the disinterested person standard or the "traditional fiduciary standards?" (*Id.*)

5. Did the Bankruptcy Court err by sustaining the objection based on the common interest between Mr. Fitzpatrick and the Official Committee of Asbestos Claimants? (*Id.* at 5.)

## III.  **STANDARD OF REVIEW**

The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a clearly erroneous standard, where factual findings may only be overturned "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (internal quotation marks and citation omitted). Legal conclusions, on the other hand, are subject to *de novo* review by the district court. *See Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997). If it is alleged that the bankruptcy court abused its discretionary authority, the district court may only inquire whether the bankruptcy court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987).

Here, the Court reviews the Bankruptcy Court's process in appointing the future claimants' representative for abuse of discretion. *See Fed. Ins. Co. v. W.R. Grace*, Nos. 04-844, 04845, 2004 WL 5517843, at *8 n.12 (D. Del. Nov. 22, 2004). The Court reviews the Bankruptcy Court's decision to apply the "disinterested person" standard *de novo*. The Court reviews the Bankruptcy

8

Court's preclusion of evidence under the common-interest doctrine for abuse of discretion. The Court reviews the Bankruptcy Court's factual finding that Mr. Fitzpatrick is disinterested for clear error, and the Bankruptcy Court's appointment of Mr. Fitzpatrick as future claimants' representative for abuse of discretion. *See id.* at *4 n.8.

## IV. DISCUSSION

### A. The Bankruptcy Court's order is final and appealable.

Appellant argues that the Bankruptcy Court's Order appointing a future claimants' representative is a final, appealable order and that this Court exercises jurisdiction to hear appeals from final orders of bankruptcy judges pursuant to 28 U.S.C. § 158(a)(1). (Appellant's Br. 1; Reply Br. 3–7, ECF No. 17.) Appellees argue that the order is not final, but interlocutory, and would be better addressed as an appeal of an order confirming the reorganization plan. (Appellees' Br. 17–19, ECF No. 9.)

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. *See* 28 U.S.C. § 158(a). The finality of a bankruptcy court's order is viewed in more practical terms than the judgment of a district court reviewed by a court of appeals. *Jacobo v. BAC Home Loans Servicing, LP*, 477 B.R. 533, 536 (D.N.J. 2012). Although a bankruptcy court order appointing a trustee or legal representative may not dispose of all issues in a case, such orders may be deemed final and appealable. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998) ("Liberal finality considerations in orders appointing bankruptcy trustees are necessary because these orders cannot be meaningfully postponed to the bankruptcy's conclusion."); *In re Amatex Corp.*, 755 F.2d 1034, 1041 (3d Cir. 1985) ("[T]he denial of the right to appoint a legal representative is final . . . .").

Subsequent to the issuance of the order appealed here, but prior to this decision, the Bankruptcy Court transmitted its Proposed Findings of Fact and Conclusions of Law to this Court

for review, recommending that the Court approve the Third Amended Prenegotiated Plan of Reorganization ("Plan"). (Notice of Proposed Findings of Fact and Conclusions of Law From Bankruptcy Court, *In re Duro Dyne National Corp.*, No. 19-15433 (D.N.J. July 16, 2019), ECF No. 1.) An objection to the Plan has already been filed. (Objection by North River Insurance Company, No. 19-15433, July 30, 2019, ECF No. 3.) To reserve consideration of the appointment of the future claimants' representative may unduly postpone review of this issue altogether. Given the practical and liberal interpretation of the finality of the order appealed here, the Court has jurisdiction.

**B.     The Bankruptcy Court's process in appointing the future claimants' representative was appropriate.**

At issue is whether a bankruptcy court may appoint a future claimants' representative nominated by the debtor, without soliciting or holding a hearing on other candidates. Appellant argues that § 524(g) requires a court to consider candidates other than those nominated by a debtor. (Appellant's Br. 28.) Appellant argues that the Bankruptcy Court had the duty to select the best candidate, and the Bankruptcy Court erred in appointing the debtor's nominee without evaluating other candidates. (*Id.* at 29–30.) According to Appellant, considering only Duro Dyne's nominee and whether he was disinterested—not whether he was the best representative—amounted to treating the nominee as "presumptively valid." (*Id.* at 32.)

Appellees argue that the Bankruptcy Code does not prescribe the process of appointing a future claimants' representative and leaves the process to the discretion of the Bankruptcy Court. (Appellees' Br. 19.) Appellees argue that a bankruptcy court has no obligation to solicit and vet multiple candidates. (*Id.* at 19–20.)

The Bankruptcy Code does not prescribe a process for appointing a future claimants' representative. The Code only provides that "the court appoints a legal representative for the

purpose of protecting the rights of persons that might subsequently assert demands," yet does not specify whether a candidate may be nominated by a debtor, whether a court must consider multiple nominees, whether the court undertakes the selection process on its own initiative, or whether the court grants deference to any party's nominee. 11 U.S.C. § 524(g)(4)(B)(i).

The legislative history supports the ability of any party in interest—including a debtor— to nominate a future claimants' representative. Congress enacted § 524(g) to codify the procedures employed in *In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y.1984), and *In re UNR Industries, Inc.*, 46 B.R. 671 (Bankr. N.D. Ill. 1985). *See In re Federal-Mogul Glob. Inc.*, 684 F.3d 355, 359 (3d Cir. 2012) ("Congress codified the Johns-Manville trust mechanism as a creative solution to help protect . . . future asbestos claimants."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235 n.47 (3d Cir. 2004) (citation omitted); *W.R. Grace*, 2004 WL 5517843, at *5. In *UNR*, the bankruptcy court allowed the U.S. Trustee to suggest a "disinterested" candidate to serve as future claimants' representative and provided that if the U.S. Trustee declined to suggest a candidate that any party in interest could suggest a candidate. *UNR*, 46 B.R. at 676. The court specified that it would "rule upon the qualification of the candidate . . . after notice and hearing." *Id.* After the U.S. Trustee declined to suggest a candidate, the *UNR* court ultimately approved the debtor's nominee for future claimants' representative. *In re UNR Indus., Inc.*, 71 B.R. 467, 472 (N.D. Ill. 1987) ("[T]he Bankruptcy Court entered an order approving [the debtor's] Application for the Appointment of a Legal Representative . . . ." (internal quotation marks omitted)). In *Johns-Manville*, the bankruptcy court appointed a future claimants' representative nominated by a co-defendant of the debtor. *In re Johns-Manville Corp.*, 52 B.R. 940, 941 (S.D.N.Y. 1985); *see also W.R. Grace*, 2004 WL 5517843, at *8.

Together these cases support the Appellees' position that a debtor—or any other party in interest—may nominate the future claimants' representative and that a bankruptcy court may approve a debtor's nominee. Subsequent asbestos bankruptcies have also followed this practice. *See, e.g.*, *In re Imerys Talc Am., Inc.*, No. 19-10289, 2019 Bankr. LEXIS 1452, at *10–15 (Bankr. D. Del. May 8, 2019) (holding, in bankruptcy with prepetition discussions but no prenegotiated plan, that a bankruptcy court may consider and appoint the debtor's sole nominee); *W.R. Grace*, 2004 WL 5517843, at *1, *9 (approving one of the debtor's three nominees for future claimants' representative). But other parties in interest are not precluded from proposing their own nominees. *E.g.*, *In re The Fairbanks Co.*, 601 B.R. 831, 838 (Bankr. N.D. Ga. 2019) ("[P]arties other than the debtor may nominate candidates."); *UNR*, 46 B.R. at 676 (permitting the U.S. Trustee to nominate candidate). Furthermore, although it may be permissible for a court to solicit nominations for a future claimants' representative, *see UNR*, 46 B.R. at 676, nothing in the text, legislative history, or prior precedent requires a bankruptcy court to solicit and consider additional nominees on its own initiative after one has been proposed.

A bankruptcy court, however, owes no deference to the debtor's—or any other party's— nominee. *See, e.g.*, *Imerys Talc*, 2019 Bankr. LEXIS 1452, at *14–15 ("[T]here should be neither more nor less deference given to a candidate proposed by any movant."); *Fairbanks*, 601 B.R. at 838 ("[A] debtor's or committee's choice is not entitled to deference."). Section 524(g)(4)(B)(i) directs the bankruptcy court to appoint the future claimants' representative. Congress intended § 524(g) to codify the protective processes in the *Johns-Manville* and *UNR* cases, where the bankruptcy courts held hearings and gave no deference to the debtor's or co-defendant's nominees. *See UNR*, 36 B.R. at 676.

Here, the Bankruptcy Court's process in appointing the future claimants' representative was permissible. Upon a motion to appoint a future claimants' representative by Duro Dyne, (A344–45, 354), with complete briefing and objections by parties in interest, (A393–457), the Bankruptcy Court heard argument on the motion at a hearing, (A473–554), permitted objectors additional discovery, (A539), and conducted another hearing where the parties in interest and Bankruptcy Court questioned the proposed representative, (A850–993). Additionally, contrary to Appellant's arguments, the Bankruptcy Court did not defer to Duro Dyne's nominee. The Bankruptcy Court made clear that it was not required to consider solely Mr. Fitzpatrick, that it was free to consider any nominee or propose its own candidate, and that it granted no deference to Mr. Fitzpatrick as the nominee. (*See* A539 ("I am going to allow a limited opportunity [for discovery] . . . so that . . . parties in interest can indeed feel comfortable with this selection, *if that's the direction the Court goes with* . . . .") (emphasis added); A541 ("[I]f I do not choose Mr. Fitzpatrick, one of the requirements will be that [the appointed future claimants' representative chosen by the Bankruptcy Court] not serve post-confirmation . . . . [I]f I'm choosing a nominee for the [future claimants' representative], that's going to be a guideline for me."); A542 ("If I ultimately choose Mr. Fitzpatrick, maybe there is no impact. . . . *If I choose someone else*, I would expect that candidate to say, [']I need more time['] . . . ." (emphasis added)).)

Finally, Appellant argues that it was error for the Bankruptcy Court to "consider[] only whether Mr. Fitzpatrick had a disabling conflict of interest while refusing to consider the entanglements and the 'qualifications of Mr. Fitzpatrick.'" (Appellant's Br. 5.) The Court need not address whether consideration of the proposed representative's qualifications is required, because the Bankruptcy Court clearly considered them here. In considering Mr. Fitzpatrick, the Bankruptcy Court had ample evidence of his experience and qualifications. (*See* A354–92, 590–92, 858–62.)

The Bankruptcy Court's statement that the "qualifications of Mr. Fitzpatrick" was not the true issue of the inquiry appears in its recognition of the objections to the process of his selection and his relationships with adverse parties—not his experience or qualifications. The Bankruptcy Court specifically indicated: "There's no question as to his experience and knowledge, his relationships and skills and what they offer for all the constituent parties here . . . . [T]his Court believes that the true issue at stake here [is] . . . the need for perhaps structural changes to ensure and address the fairness concerns and the adequacy concerns . . . ." (A536.) The Bankruptcy Court made factual findings of Mr. Fitzpatrick's qualifications as well as his lack of disqualifying entanglements with Duro Dyne and the asbestos personal injury attorneys, which it evidently deemed necessary for the disinterested person analysis. (A1003–07.) Clearly, the Bankruptcy Court considered Mr. Fitzpatrick's qualifications and entanglements.

A bankruptcy court is not required to solicit and evaluate additional nominees to select the best candidate, but neither may it simply rubberstamp a debtor's nominee. A bankruptcy court must undertake a thorough evaluation and only appoint a nominee following a hearing. Because the Bankruptcy Court appointed the nominated future claimants' representative after notice, discovery, and a hearing, and did not grant deference to the nominee, the Bankruptcy Court's process in selecting the representative was appropriate.

## C. "Disinterested" is the appropriate standard in appointing a future claimants' representative.

Appellant argues that the Bankruptcy Court erred in applying the disinterested person standard under 11 U.S.C. § 101(14) rather than the "appearance of impropriety" standard for the appointment of the future claimants' representative. (Appellant's Br. 36.) Appellant argues that because § 524(g)(4)(B)(i) does not supply the appropriate standard for the legal representative—unlike other sections of the Code that reference § 101(14)—this evinces Congress's intent to apply

a different standard and that the "fiduciary standards applicable to fiduciaries who protect the rights of absent parties" should fill the gap. (Appellant's Br. 36.) Appellant likens the appointment of a future claimants' representative to the appointment of fiduciaries who represent or have the power to bind absent parties, such as a guardian ad litem or a class representative under Federal Rule of Civil Procedure 23. (Appellant's Br. 39–40.) Appellant, accordingly, argues this similarity warrants a higher standard: that a future claimants' representative must not have an "appearance of impropriety." (Appellant's Br. 40.)

Appellees argue that the Bankruptcy Court's application of the disinterestedness standard was proper. Appellees cite myriad prior appointments of future claimants' representatives in which bankruptcy courts applied the disinterestedness standard. (Appellees' Br. 27–29.) Appellees further note that although Congress amended § 524 following these appointments applying the disinterested person standard, Congress did not amend § 524(g)(4)(B)(i), evincing Congress's acquiescence to the application of the disinterested person standard. (Appellees' Br. 29–30.)

The Court acknowledges that, until recently, most courts have applied the disinterestedness standard and rejected the appearance of impropriety standard for the appointment of a legal representative under § 524(g)(4)(B)(i). *E.g.*, *Chi. Ins. Co. v. Thorpe Insulation Co.*, 2008 WL 11338766, at *1 (C.D. Cal. July 14, 2008) (describing bankruptcy court's application of the disinterestedness standard); *W.R. Grace*, 2004 WL 5517843, at *4–9 (affirming application of the disinterestedness standard and rejecting the appearance of impropriety standard); Tr. of Bench Decision at 72–74, *In re Congoleum*, No. 04-01517 (D.N.J. Aug. 2, 2004) (affirming bankruptcy court's application of disinterested person standard and determining "an appearance [of impropriety] standard is too high a standard in this context"); Hr'g Tr. at 70, *In re Leslie Controls, Inc.*, No. 10-12199 (Bankr. D. Del. Aug 9, 2010) (applying disinterested person standard).

Recently, however, the U.S. Bankruptcy Court for the Northern District of Georgia in *In re The Fairbanks Co.*, 601 B.R. 831 (Bankr. N.D. Ga. 2019), adopted an approach similar to that advocated by the U.S. Trustee: holding that "[a]ppointment of a[] [future claimants' representative] involves the same considerations as appointment of a guardian ad litem." *Fairbanks*, 601 B.R. at 841. In another recent departure from the disinterested standard, the U.S. Bankruptcy Court for the District of Delaware held in *In re Imerys Talc* that the "standard for approval of a legal representative under [§] 524 is that he must be independent of the debtors and other parties-in-interest in the case and must be able to act with undivided loyalty to demand holders." 2019 Bankr. LEXIS 1452, at *33. The Court conducts *de novo* review of the Bankruptcy Court's interpretation of § 524(g)(4)(B)(i) and determination of the appropriate standard.

The text of § 524(g)(4)(B)(i) "neither explicitly specifies the process for appointing a future claimants' representative nor specifically provides standards for determining who may serve as future claimants' representative." *W.R. Grace*, 2004 WL 5517843, at *5. But the legislative history of § 524(g) supports the disinterestedness standard. As stated previously, Congress enacted § 524(g) to codify the procedures employed in the *Johns-Manville* and *UNR* cases. *See Federal-Mogul Global Inc.*, 684 F.3d at 359. In *Johns-Manville*, the legal representative for future claimants had powers similar to a committee under 11 U.S.C. § 1103, which are nonbinding but would allow future claimants a "meaningful opportunity to be heard and to participate." 52 B.R. at 943; *see In re Johns-Manville*, 60 B.R. 842, 845 (S.D.N.Y. 1986), *rev'd on other grounds*, 801 F.2d 60 (2d Cir. 1986) (noting the legal representative was appointed to represent future claimants but "without the power to bind such persons").[6] This belies Appellant's argument that the future

---

[6] The bankruptcy court in *Johns-Manville* identified "several formulations of legal representation," including "guardian ad litem, amicus curiae and examiner." *In re Johns-Manville Corp.*, 36 B.R. 743, 758 (Bankr. S.D.N.Y. 1984). The court ultimately rejected the guardian ad litem role and

claimants' representative should be held to the same standard as a representative with the power

to bind absent parties. *See In re G-I Holdings, Inc.*, 328 B.R. 691, 698 (D.N.J. 2005) (citing *Johns-*

*Manville*, 60 B.R. at 845 (distinguishing a future claimants' representative from a guardian ad

litem on the basis of the roles' abilities to bind absent parties).)

As in *Johns-Manville*, the legal representative in *UNR* similarly exercised the powers of a

committee under § 1103, and the bankruptcy court permitted the U.S. Trustee to "suggest a

*disinterested* party" for the position. *UNR*, 46 B.R. at 676 (emphasis added). Congress's adoption

of the *UNR* protections, which specified a "disinterested" person to serve future claimants'

representative, favors applying the disinterested standard here. *See W.R. Grace*, 2004 WL

5517843, at *7.

Here, the future claimants' representative had similar duties and powers to those in *Johns-*

*Manville* and *UNR*, as evidenced by the proposed Asbestos Trust Agreement before the

Bankruptcy Court. (*See* A174–275.) The proposed Asbestos Trust Agreement provides that the

future claimants' representative "shall serve in a fiduciary capacity, representing the interests of

the holders of future Asbestos Claims for the purpose of protecting the rights of such persons."

(A208.) But the future claimants' representative's power is limited to consulting with the trustee

and consenting to certain actions proposed by the trustee; the future claimants' representative may

not unilaterally bind absent persons in the way a guardian ad litem might. For example, it is the

trustee who may propose changes to the payment percentage or the claims payment ratio, but no

changes may be made without the consent of the future claimants' representative and current

claimants' committee. (A187.) Where the trustee must obtain the future claimants' representative's

---

appointed a representative "authorized to exercise the powers and perform the duties of a
Committee under Section 1103 of the Bankruptcy Code." *Johns-Manville*, 52 B.R. at 942 (internal
quotation marks omitted).

consent, the future claimants' representative does not have the unilateral ability to enact or veto changes; The future claimants' representative is not required to consent to the trustee's proposals, but "may not withhold his or her consent unreasonably." (A212.) If the future claimants' representative does not timely inform the trustee of his consent or objections, his "consent shall be deemed to have been affirmatively granted." (A213.) If the future claimants' representative continues to object and withhold consent, the trustee and future claimants' representative would enter an alternative dispute resolution process, where the burden of proof would be on the future claimants' representative to show that withholding consent was valid. (A220.)

The proposed Asbestos Trust Agreement illustrates that it is the trustee who binds future claimants—not the future claimants' representative. The role of the future claimants' representative is to consider the best interests of the future claimants, consult with and advise the trustee on the best course of action, and ultimately consent or object to the Trustee's choices. Should the future claimants' representative object, it is the Trustee who has the upper hand in resolving the dispute. Although the future claimants' representative is an essential role in the asbestos trust, his powers do not permit him to bind absent parties.

Subjecting the future claimants' representative—who consults on and consents to activities of the asbestos trustee—to a higher standard than the trustee does not comport with the legislative history or statutory framework. The standard for appointing the asbestos trustee is the disinterested person standard. 11 U.S.C. § 1104(b). The asbestos trustee is a fiduciary for the future claimants—as is the future claimants' representative—but is also a fiduciary for the present claimants. And it is the trustee who is the dominant actor in binding the future claimants. As the Bankruptcy Court noted, given the subordinate relationship and limited responsibilities of the future claimants'

representative, it would be incongruous to hold the future claimants' representative to a higher standard than the disinterested trustee. (A1002–03.)

Furthermore, although legislative acquiescence to the application of the disinterested person standard to the appointment of future claimants' representatives is not dispositive, the absence of remedial action from Congress is persuasive. Courts of this District have applied the disinterested person standard for appointing a future claimants' representative as early as 2004. *See* Tr. of Bench Decision at 72–74, *In re Congoleum*, No. 04-01517 (D.N.J. Aug. 2, 2004). Yet since then, Congress has amended § 524 in 2005, 2010, and as recently as last month without amendment to § 524(g)(4)(B)(i).[7] *See* Small Business Reorganization Act of 2019, Pub. L. No. 116-54, §§ 4(a)(9)(A)–(C), 133 Stat. 1086, 1087 (2019); Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, § 2(a)(19), 124 Stat. 3557, 3559 (2010); Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, §§ 202, 203(a), 119 Stat. 43, 194 (2005).

Without explicit direction from Congress, the legislative history and structure of the Bankruptcy Code show the most appropriate standard by which to evaluate the appointment of a future claimants' representative is the disinterested person standard under 11 U.S.C. § 101(14).[8]

---

[7] The introduction of legislation in 2018 and 2019 that would codify the disinterested person standard for future claimants' representatives may not provide direct support here, *e.g.*, PROTECT Asbestos Victims Act of 2018, S. 2564, 115th Cong. § 2(a) (2018), but the Court was unable to find, and the parties did not raise, any legislation seeking to codify the absence of impropriety standard.

[8] Application of the disinterested person standard is also practical in this context. The Third Circuit has cautiously endorsed prenegotiated or prepackaged bankruptcies as a viable, efficient practice for corporations overburdened by asbestos litigation—albeit a practice that must be thoroughly scrutinized. *See Congoleum*, 426 F.3d at 693 ("Pre-packaged plans offer a means of expediting the bankruptcy process by doing most of the work in advance of filing. That efficiency, however, must not be obtained at the price of diminishing the integrity of the process."). The Bankruptcy Court heard argument from insurance counsel that applying a standard higher than disinterestedness would render the common practice of appointing the same person to serve as prepetition and

**D.    The Bankruptcy Court did not abuse its discretion in precluding discovery of privileged communications based on the common-interest doctrine.**

The common-interest doctrine "protects the confidentiality of privileged communications shared by parties with common legal interests against a common adversary." *In re Chevron Corp.*, 650 F.3d 276, 290 n.19 (3d Cir. 2011) (citation omitted). At the evidentiary hearing on Mr. Fitzpatrick's appointment, the Bankruptcy Court sustained an objection on the basis of the common-interest doctrine, precluding inquiry into the substance of Mr. Fitzpatrick's prepetition negotiations with Duro Dyne and the Ad Hoc Committee. (A889–895.) Decisions of a bankruptcy court "concerning the scope or opportunity for discovery" are within the bankruptcy court's discretion and are reviewed for abuse. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003) (citation omitted).

The U.S. Trustee appeals the evidentiary decision, and argues that the common-interest doctrine should "not apply to Mr. Fitzpatrick's prepetition communications because he should have been acting as a zealous adversary of the debtors and the present asbestos claimants rather than an ally." (Appellant's Br. 51–52.) Appellant argues that "Mr. Fitzpatrick's previous and current connections with the debtors, personal injury law firms, and present asbestos claimants in other asbestos trust matters . . . [as well as] all facts relating to the mutual decision of the debtors and the [Ad Hoc Committee] to retain him" do not fall within the common-interest doctrine. (*Id.* at 52.)

---

post-petition future claimants' representative in prenegotiated or prepackaged bankruptcies "unworkable": a prepetition representative could never be appointed future claimants' representative because there could always be some allegation of impropriety. (A517–520.) Applying the disinterested person standard is appropriate here because it subjects the future claimants' representative to the highest standard in the Code while retaining the practical efficiency of a prenegotiated bankruptcy.

Appellees argue that Mr. Fitzpatrick, Duro Dyne, and counsel for the current asbestos claimants "share the common interest of preserving and maximizing assets" during the prepetition period. (Appellees' Br. 50.) Additionally, Appellees argue that the specifics of the prepetition negotiations were properly determined to be irrelevant to whether Mr. Fitzpatrick is disinterested. (*Id.* at 49, 52.)

The common-interest doctrine "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), *as amended* (Oct. 12, 2007).[9] For the doctrine to apply, the communication sought "must be shared with the attorney of the member of the community of interest" and "all members of the community must share a common legal interest in the shared communication." *Teleglobe*, 493 F.3d at 364 (emphasis omitted) (citation omitted). The common legal interest must be "substantially similar," *id.* at 365, but the "interests of the separately represented clients need not be entirely congruent," *O'Boyle v. Borough of Longport*, 94 A.3d 299, 310 (N.J. 2014) (citing Restatement (Third) of The Law Governing Lawyers § 76 cmt. e (Am. Law Inst. (2000)).

First, it is necessary to reiterate the relevant inquiry at the evidentiary hearing. The Bankruptcy Court identified the disinterested person standard as the appropriate standard for review. Under the Bankruptcy Code, in relevant part, a disinterested person:

---

[9] The doctrine only applies "if an underlying privilege has been established." *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008) (citation omitted). Appellees argue that "materials concerning the negotiation and development of a plan of reorganization and related plan documents are irrelevant, confidential and inadmissible," citing numerous cases. (Appellees' Br. 50–51 (emphasis omitted).) Appellant does not contest the underlying privilege of the communications, only that the common interest did not exist. (*See* Appellant's Br. 49–53.) Considering that Mr. Fitzpatrick conducted negotiations through counsel, the Court presumes there is an underlying privilege in these communications. (A864–65, 870.)

> (B) is not and was not, within [two] years before the date of the filing
> of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the
> estate or of any class of creditors or equity security holders, by
> reason of any direct or indirect relationship to, connection with, or
> interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). In short, the relevant inquiry under this standard is into the nominee's

relationships and interests—direct and indirect, personal and financial.

The Bankruptcy Court permitted discovery into four areas tailored to the disinterested

person standard: (1) the circumstances of Mr. Fitzpatrick's hiring; (2) Mr. Fitzpatrick's

relationships with members of the Ad Hoc Committee; (3) Mr. Fitzpatrick's financial incentives

in serving as future claimants' representative; and (4) the effect of Mr. Fitzpatrick's service as

post-confirmation future claimants' representative in other asbestos bankruptcies. (A1002.) On

cross-examination at the evidentiary hearing, insurance counsel inquired into details of Mr.

Fitzpatrick's negotiations on the term sheet.[10] Counsel representing the Official Committee of

Asbestos Claimants objected, asserting that "plan negotiations" between a prepetition future

claimants' representative and ad hoc committee of current claimants were "protected from

---

[10] The questions and answers preceding the objection were:

> Q: What negotiations did you engage in to change the term sheet?
> A: We did a number of negotiations to change the term sheet.
> Q: What changes did you make, Mr. Fitzpatrick?
> A: I can't recall all the changes that we made.
> Q: Can you recall any of the changes?
> A: Well, not as we sit here today, no. But there were definitely
>    changes.
> Q: Were there changes that you suggested?
> A: Suggestion is probably as good a word as any.
> Q: What changes did you suggest, Mr. Fitzpatrick?

(A889–90). Counsel for the Official Committee of Asbestos Claimants objected after the final
question.

discovery under the common interest doctrine." (A890.) The Bankruptcy Court sustained the objection:

> I am going to sustain the objection. I'm not going to allow for inquiry into the details of the negotiations ... held by Mr. Fitzpatrick as part of the pre-petition process. The issue was whether or not he was simply accepting a term sheet as is and signing off on it. It goes far beyond the need to inquire into the specifics of the changes he proffered and those that were accepted at this point. And ... in weighing the balance between the harm to the debtor going forward and having that information disclosed versus the value of the common interest exception, I'm going to come down on the side of the privilege at this juncture.

(A895.)

Sustaining the objection does not amount to abuse of the Bankruptcy Court's discretion. First, the substance of the negotiations over the term sheet are largely irrelevant in determining whether Mr. Fitzpatrick was disinterested. Inquiring into negotiations may be relevant to determine whether Mr. Fitzpatrick was empowered and free to negotiate, or whether he had an interest to refrain from negotiating, or whether his relationship with Duro Dyne or the ad hoc committee would limit his ability to negotiate. The substance of those negotiations—the specific changes he suggested to the term sheet—is more relevant to a person's effectiveness than their potential material adverse interests. This is beyond the scope of the disinterested person inquiry.

Second, it is probable that much of the information sought would be privileged and within the common-interest doctrine. A future claimants' representative and an ad hoc committee may share a common interest where prepetition negotiations are concerned with maximizing the funds available to the trust from insurers. *See In re Leslie Controls, Inc.*, 437 B.R. 493, 502 (Bankr. D. Del. 2010). But while the parties may share a common interest in maximizing the funding available to the trust, they may simultaneously be adverse on other issues. *See id.* ("[T]he size of the pie and the size of the pieces are two separate questions. The parties are in accord as to the former and

adversaries as to the latter."). For example, in negotiating the payment percentage in the trust distribution plan, the future claimants' representative is adverse to current claimants, even though both parties seek to treat present claims substantially the same as future claims. A high payment percentage, though it may treat a current claimant and future claimant the same, would be more preferable to current claimants: the higher the payment percentage, the more money is depleted from the trust and the greater the risk the trust is exhausted before a future claimant arrives. Current claimants would seek the highest possible percentage, knowing the odds are low that the trust is exhausted before they are paid. A future claimants' representative would seek a lower percentage, preferring the security of some money being available for future claimants and knowing that the percentage could always be increased later.

Here, on this issue of the payment percentage, Mr. Fitzpatrick said the payment percentage was still yet to be derived. (A888.) When asked about any actions he took "adverse to the ad hoc committee to ensure so far that present claims would be treated in substantially the same manner as future demands," Mr. Fitzpatrick responded, "I don't think we've reached the stage where we would be adverse yet." (*Id.*) These statements favor broad protection under the common-interest doctrine. On the other hand, at the time of the hearing, Mr. Fitzpatrick had negotiated at least some portions of the trust distribution plan. (A611–14, 874, 896, 908.) Those negotiations included: (1) eliminating asbestosis and other lower-tier disease categories; (2) capping the amount of money that may compensate victims of certain categories to ensure that ninety percent of the funds compensate mesothelioma victims; (3) instituting a filing fee; (4) permitting the trust to change the payment percentage while any dispute over the percentage is ongoing; and (5) instituting guidelines on trustee compensation, among others. (A611–14.) On each of these issues, there appears to be no reason for the interests of future claimants to be adverse to current claimants.

The more issues negotiated prior to filing, the more likely it is that negotiations moved from the size of the pie to the size of the pieces. But where questioning focuses on the substance of those negotiations, the less likely it is the questioning was relevant to the disinterested person inquiry. The Bankruptcy Court exercised its decision to preclude questioning into the substance of negotiations. The Bankruptcy Court considered the relevance of the questioning to the appropriate inquiry as well as the risk of disclosing privileged information and decided the line of questioning was not worth the risk. This does not rise to abuse of discretion. The Bankruptcy Court's evidentiary decision is affirmed.

### E. The Bankruptcy Court's factual finding that Mr. Fitzpatrick is disinterested was not clearly erroneous.

The Bankruptcy Court found that Mr. Fitzpatrick was disinterested. (A1009.) Factual findings of a bankruptcy court are reviewed for clear error and may only be overturned where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Cellnet Data Sys.*, 327 F.3d at 244 (citation omitted).

The Bankruptcy Court proceeded through the three requirements of 11 U.S.C. § 101(14) to determine that Mr. Fitzpatrick was disinterested. (A999–1016.) The Bankruptcy Court first acknowledged that there was no argument that Mr. Fitzpatrick was a creditor, equity security holder, or insider under 11 U.S.C. § 101(14)(A). (A1011.) The Bankruptcy Court then addressed whether Mr. Fitzpatrick's service as prepetition future claimants' representative, for which he was paid by Duro Dyne, made him an "employee of the debtor" under § 101(14)(B). (A1011–12.) The Bankruptcy Court determined Mr. Fitzpatrick's "retention had none of the traditional attributes of employment": his fees were not capped, his payment was no different than that for any other professional engaged prepetition in a bankruptcy, and he had no promise of future employment. (*Id.*) The Bankruptcy Court found credible Mr. Fitzpatrick's testimony that his employment as

future claimants' representative post-confirmation was not required, not bargained for, and was simply the prior practice which served the interest of future claimants. (A1012.) Finally, the Bankruptcy Court found that neither Mr. Fitzpatrick's relationship and connection with the debtors nor his service as prepetition future claimants' representative amounted to a material interest adverse to future claimants under 11 U.S.C. § 101(14)(C). (A1012–13.) The Bankruptcy Court again found that Mr. Fitzpatrick's ability to consider modifications to the plan in the best interest of the future claimants was not hampered by either his prepetition service or the prospect of him serving as future claimants' representative post-confirmation. (A1013–15.)

Considering the evidence presented here, the Bankruptcy Court's finding was not clearly erroneous. Appellant argues that Mr. Fitzpatrick may not be disinterested where his prepetition fees were paid by Duro Dyne, as this was akin to a representation relationship and amounted to a conflict of interest. (Appellant's Br. 43.) Additionally, Appellant argues that Mr. Fitzpatrick was required—or at least motivated—to approve whatever plan was put before him. (*Id.* at 41–42.)

But there was ample evidence supporting the Bankruptcy Court's conclusion. Mr. Fitzpatrick's engagement letter establishes that, although his fees would be paid by Duro Dyne, his "sole responsibility and loyalty is to the future asbestos personal injury claimants." (A383.) The engagement letter provides that if a bankruptcy petition were filed, Duro Dyne "anticipate[d] that it would ask the Bankruptcy Court to appoint Mr. Fitzpatrick to represent future asbestos personal injury claimants," but the nomination was not a promise. (A384.) Additionally, the engagement letter specifies that if Duro Dyne filed a bankruptcy petition, "Mr. Fitzpatrick's service as [future claimants' representative would] terminate immediately, and thereafter Bankruptcy Court approval [would] be required for his engagement to represent future asbestos personal injury claimants." (*Id.*) Of course, it is likely that a debtor would nominate a prepetition

26

future claimants' representative for the post-petition position: if the representative already has consented to the proposed plan of reorganization and the debtor is satisfied enough with the plan to file for bankruptcy, the debtor has little incentive not to nominate the same representative who helped produce a satisfactory reorganization plan.[11] But the engagement letter did not "require the debtors to seek [Mr. Fitzpatrick's] appointment." (Appellant's Br. 42.) The absence of a promise to nominate Mr. Fitzpatrick post-petition, considering the other evidence of his engagement in the matter, is sufficient for the Bankruptcy Court to find that Mr. Fitzpatrick was disinterested.

Additionally, the Bankruptcy Court heard testimony that Mr. Fitzpatrick did not consider himself a Duro Dyne employee and that Duro Dyne did not direct his work. (A868.) Mr. Fitzpatrick testified that he could freely negotiate the plan and was not required to consent to any plan. (A871– 74.) Finally, Mr. Fitzpatrick testified that, if he were appointed, he was free to consider proposed changes to the trust documents and would consider any changes in good faith. (A879–80.) The evidence supported a finding that Mr. Fitzpatrick was a disinterested person under 11 U.S.C. § 101(14); the Bankruptcy Court's factual finding, therefore, is not clearly erroneous.

### F. The Bankruptcy Court did not abuse its discretion in appointing Mr. Fitzpatrick as future claimants' representative.

The Bankruptcy Court's Order appointing Mr. Fitzpatrick as future claimants' representative is reviewed for abuse of discretion and must be reversed "where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact." *In re Marvel*, 140 F.3d at 470 (citation omitted). Here, the process in appointing the legal representative was appropriate, the selection of the disinterested person

---

[11] *See generally* Mark D. Plevin et al., The Future claimants' representative in Prepackaged Asbestos Bankruptcies: Conflicts of Interest, Strange Alliances, and Unfamiliar Duties for Burdened Bankruptcy Courts, 63 N.Y.U. Ann. Surv. Am. L. 271, 291–92 (2006).

standard was correct, and the factual finding that Mr. Fitzpatrick was disinterested was not clearly erroneous. Because the Bankruptcy Court's Order appointing Mr. Fitzpatrick as future claimants' representative does not rest upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact, there can be no abuse of discretion.

V.    **CONCLUSION**

For the reasons set forth above, the U.S. Trustee's Appeal is denied, and the Bankruptcy Court's Order is affirmed. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 30, 2019